## CITY OF ROME *v.* SUDDETH.

A petition in a suit for damages against a municipal corporation on account of personal injuries, which alleges that the municipal authorities allowed to be placed at a certain point in the city " two large stones," and that the plaintiff's horse became frightened at these stones and ran away, causing the injuries on account of which suit is brought, but which fails to allege the length of time that the stones were permitted to remain in the place described, that the stones were objects naturally tending to frighten an ordinarily roadworthy horse, and that his horse was such an animal, and which

does not allege that the city violated any duty in failing to cause the removal of the, stones, or make any allegation of fact from which such a violation of duty can be inferred, does not state facts sufficient to authorize a recovery against the city, and should be dismissed on demurrer.

Argued November 13, — Decided December 10, 1902.

Action for damages.　Before Judge Henry.　Floyd superior court.　April 2, 1902.

*Halsted Smith*, for plaintiff in error, cited 67 *Ga.* 618; 103 *Ga.* 850; 1 Shear. & Redf. Neg. (5th ed.) § 367, p. 633; 2 Dill. Mun. Corp. (3d ed.) § 1015, p. 1035; 9 Am. Neg. Rep. 184; 10 Am. Neg. Rep. 220; 102 N. Y. 219, s. c. 6 N. E. 273 (1); 77 N. Y. 90; 100 Mass. 255; 99 Wis. 190, s. c. 74 N. W. 815 (2); 19 N. Y. S. 557, Am. Dig. 1892, p. 2417, § 246.

*Seaborn & Barry Wright*, contra, cited 107 Ind. 475, s. c. 57 Am. R. 124; 25 Wis. 288, s. c. 3 Am. R. 73; 32 N. Y. S. R. 532; 41 Vt. 435, s. c. 98 Am. D. 600; 30 Conn. 134; 39 Conn. 376, s. c. 12 Am. R. 396; 91 Pa. St. 226; 48 N. H. 18; 35 Me. 100; 43 N. H. 356; 65 Me. 547, s. c. 20 Am. R. 722; 41 N. H. 317; 15 Am. & Eng. Enc. L. (2d ed.) 445 (f), 446 (3) and cit.

CANDLER, J.　Suddeth sued the City of Rome for damages.　His petition alleged that, a few days prior to July 28, 1901, two large stones were placed at a certain point in the city at the intersection of two streets and on the side of one of them; that on the day named, while driving with his wife and children by this point, his horse became frightened at the stones and ran away, throwing him to the ground and causing the injuries sued for; and "that said runaway, causing said injuries, was caused by the negligence of said city in allowing and permitting the placing of said stones in said place, and in allowing and permitting said stones to remain in said place where it was likely and probable that they would frighten horses being driven along said avenue."　Other than the language quoted, there was no attempt to charge the city with negligence. The petition was silent as to the length of time that the stones had been allowed to remain in the place referred to.　The stones were not described, nor does it appear from the petition that they were objects which of themselves would have a natural tendency to frighten horses, or that they were placed on the street in such a manner as to give rise to that tendency.　No intimation is contained in the petition as to whether the plaintiff's horse was or was not

gentle and roadworthy, or whether or not the plaintiff was driving him in an ordinarily careful manner. To this petition the defendant demurred generally, and on the ground that no facts were stated therein showing any negligence on the part of the defendant, upon which a recovery could be had. The demurrer was overruled, and the city excepted.

Construing the declaration, as we must, most strongly against the plaintiff, the reasonable inference from the language used is that the placing of the stones in question at the point mentioned was an act of some one other than a servant or agent of the city. While the declaration alleges that the city allowed the stones to be so placed, and further charges that the city was negligent in permitting them to remain as they were, it does not necessarily follow that the city had actual notice that the stones had been put upon the side of the street as charged in the petition. Municipal corporations are not liable for defects in their streets, when there has been no negligence in constructing or repairing them, "when it has no notice thereof, unless such defect has existed for a sufficient length of time for notice to be inferred." Pol. Code, § 749. It follows that where an object or objects which would not ordinarily cause a reasonably roadworthy horse to take fright are placed, by some one other than a servant or agent of the municipal corporation, on the side of a street, as a result of which one is injured by the running away of a horse frightened at such object, unless the city authorities had actual knowledge, or a sufficient time had elapsed to charge them with notice of the fact that these objects were on the streets, the corporation should not be held liable; and a declaration which, reasonably construed, alleges that the objectionable objects were placed upon the street by some one other than a servant of the city, and which does not allege that the city authorities knew or were chargeable with knowledge that this state of facts existed before the injuries complained of were received, is defective. See, on this subject, *Enright* v. *Atlanta*, 78 *Ga.* 289.

The declaration was also defective in failing to set out either the character of the stones complained of, or the manner in which (if it was the manner of placing the stones that constituted the negligence alleged) the stones were left upon the street. The authorities are agreed that a city's liability to a private action for injuries caused by the obstruction of a street is for culpable neglect

of duty, and such neglect can only be predicated on the fact that the character of the defect was such that injuries to travelers therefrom might reasonably be anticipated. *Simon* v. *Atlanta,* 67 *Ga.* 618; 1 Shear. & Redf. Neg. (5th ed.) § 367. "Whenever a municipal corporation is not uniformly liable for torts of the character which the plaintiff attempts to set forth, he should set out in his declaration, petition or complaint, the special facts on which the liability in the particular case is claimed." "In actions against a municipal corporation for damages arising from a failure to perform a duty alleged to be owed by the corporation to the plaintiff, the facts from which the conclusion may be drawn that the defendant's duty to the plaintiff is as charged should be set out. It is not sufficient merely to state the duty as a legal conclusion, and a mere averment that the act done was unlawful, without averring how and in what its illegality consisted, is not sufficient." 14 Enc. Pl. & Pr. 238; Conway *v.* Beaumont, 61 Tex. 10. "In an action against a municipal corporation to recover damages for a physical injury, negligence on the part of the defendant is the test of liability. No matter how free from negligence the plaintiff may have been, he would not be entitled to recover unless his injuries were caused by, or were attributable to, negligence on the part of the defendant. There is no presumption against the city in such a case, and therefore the plaintiff must allege such a state of facts as will show negligence on its part. The mere allegation by a plaintiff that an act, otherwise unobjectionable, is negligent, will not suffice; he must show of what the negligence consisted. It is a well-known fact that it often becomes necessary in cities that building material for the use of property-owners shall be unloaded, and for a time remain on the side of the streets. Municipal corporations are charged with the care and control of their streets, and are bound to see that such streets are kept in a condition of safety for the passage of persons and property; and if this duty be neglected to the injury of a citizen, the corporation is liable. This obligation frequently entails the necessity of obstructing the street for its entire width, and at times leaving it obstructed for days or even weeks. It would not do to say that in every such case, in the event of an injury caused by the running away of a horse frightened at the sight of building material, paving-blocks, or curbing, the city would be liable in damages. In order to establish

such a liability, some special and well-defined reason must be set forth." In the case of Cincinnati v. Fleischer (Ohio), 9 Am. Neg. Rep. 184, it was held that the duty of keeping the streets in good order is not violated by permitting a carriage-block to occupy the usual position of such blocks near the curb. In this case the plaintiff described the block as a large one. In DuBois v. Kingston, 102 N. Y. 219, it was held that a municipal corporation does not, by assenting to the placing of a stepping-stone on the edge of a sidewalk, become liable for accidents caused thereby. The Supreme Court of the United States has held that the fact that a steam roller was left standing for two days on the side of a street did not justify the submission to the jury of the question of negligence, and that the District of Columbia was not liable in damages to a person who was injured by reason of his horse becoming frightened at the roller. District of Columbia v. Moulton, 10 Am. Neg. Rep. 220. The mere fact that injuries result from a horse being frightened by some object upon the public streets does not give a right of action against the city. Ritger v. Milwaukee (Wis.), 74 N. W. 815. It is not reasonable to suppose that an ordinarily gentle horse would be frightened by two stones on the side of a street, and a declaration which fails to allege, in an action on account of injuries received from such a cause, that allowing the stones to be placed and to remain there was an act which would tend to cause an ordinarily roadworthy horse to become frightened, is fatally defective.

In the case of Keeley Brewing Co. v. Parnin (Ind.), 41 N. E. 471, the Appellate Court of Indiana, in discussing a case similar in its facts to the one now under consideration, said : " The principal and primary purpose of the ordinary highways is to afford the people of the State a means of intercommunication, and of passing from place to place. They are specially designed for passage and travel. But this is not the sole and exclusive purpose for which they may be used. They may be lawfully used for many other purposes, provided such uses do not materially interfere with the primary purpose. The right of the public to the use of the highways is subject to reasonable and necessary limitations. The improvement of the highways themselves, the improvement of abutting lots by digging cellars and the erection of buildings, their use for the carriage and delivery of grain, fuel, and other goods, the load-

ing and unloading of the same thereon, are legitimate uses of the highways, although such uses may result in a temporary obstruction to the travel." Citing Beach, Pub. Corp. § 1230; Dill. Mun. Corp. § 730. The defendant in the present case had the right to use its streets for the purpose of placing thereon curbstones, material for sidewalks, and for many other purposes which might be mentioned. Abutting property owners had, within limitations, the same right. The plaintiff's right to travel thereon was a superior right; but it is the duty of a traveler upon a highway to take into consideration the rights not only of his fellow-travelers but of others to use the highway for purposes other than those of travel, and to conform to those usages and customs which have grown up with the civilization and commerce of the city or country through which the road is constructed. " The person using a highway for purposes other than travel is in duty bound to conform to the rights of the traveling public. A violation of these duties may constitute negligence, and lead to legal liability. There is no rule of law that forbids a person from traveling on a highway with a skittish or ill-broken horse, but if he do so he may be liable for the injuries resulting therefrom. Nor is there any fixed rule as to what objects a person may bring upon, or what acts he may do upon, a highway. But there are objects and acts which have a tendency to frighten horses. . . If a person bring such an object upon or do such an act on a highway, he will violate a duty he owes to the traveling public, and be guilty of negligence. It does not follow that because he is negligent he is liable. The person injured may also be in fault. If the latter be traveling with a skittish or untrustworthy horse, there are instances in which he will be deemed to have assumed the risk or contributed to his own injury; for, although the object or act done may have had a tendency or was likely to frighten any kind of a horse, and although both a gentle horse and a skittish horse might have passed the object or act without becoming frightened, still there is much more probability that a skittish horse would become frightened than a gentle and well-trained one. It is for these reasons that, in order to make the complaint good, it should aver, either specially or in equivalent general terms, that the object or act done had a tendency to or was likely to frighten a horse of ordinary gentleness. In other words, the complaint must aver negligence on the part of the defendant

and negative contributory negligence on the part of the plaintiff. . . If the obstruction or act be one that a person have no right to do or make at all, then there may be a liability, even though the horse be not one of ordinary gentleness." Keeley Brewing Co. *v.* Parnin, supra.

There is nothing in the declaration in the present case that goes to show that the plaintiff is entitled to recover. The charge of negligence made against the municipal authorities is too vague and general to constitute a basis of recovery against the city. For these reasons we hold that the court below erred in overruling the demurrer.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*